1  **Law Offices of Ann E. Grant**
   Ann E. Grant (SBN157522)
2   *agrant723@aol.com*
   1500 Rosecrans Avenue, Suite 500
3  Manhattan Beach, California 90266
   Telephone: 310.802.1500
4  Fax: 310.802.0500

5  Attorneys for Plaintiff
   STORM MANUFACTURING GROUP, INC.
6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10
   STORM MANUFACTURING GROUP,          ) CASE NO. **CV12-10849**—CAS
11 INC., a California Corporation,       )                    (FFM)
                                        )
12                                      ) **CIVIL COMPLAINT FOR DAMAGES**
                                        ) **AND INJUNCTIVE RELIEF FOR**
13              vs.                      ) **VIOLATIONS OF:**
                                        )
14                                      ) **1) LANHAM ACT 43(a); 2) FALSE**
   WEATHER TEC CORPORATION, a           ) **ADVERTISING UNDER CALIFORNIA**
15 California Corporation; NICK ROGERS, an ) **BUSINESS & PROFESSIONS CODE**
                                        ) **§17533.7; 3) DECEPTIVE PRACTICES**
16 individual, and DOES 1-10, inclusive, ) **UNDER CALIFORNIA CIVIL CODE**
                                        ) **§1770; 4) UNFAIR COMPETITION**
17              Defendants.             ) **UNDER BUSINESS & PROFESSIONS**
                                        ) **CODE §17200 ET SEQ.; 5) ACTUAL**
18                                      ) **MONOPOLIZATION UNDER SECTION**
                                        ) **TWO OF THE SHERMAN ACT; 6)**
19                                      ) **ATTEMPTED MONOPOLIZATION**
                                        ) **UNDER SECTION TWO OF THE**
20                                      ) **SHERMAN ACT; 7) SECTION 3 OF THE**
                                        ) **CLAYTON ACT; 8) INTENTIONAL**
21                                      ) **INTERFERENCE WITH PROSPECTIVE**
                                        ) **ECONOMIC ADVANTAGE; 9)**
22                                      ) **NEGLIGENT MISREPRESENTATION;**
                                        ) **10) NEGLIGENT INTERFERENCE**
23                                      ) **WITH PROSPECTIVE ECONOMIC**
                                        ) **ADVANTAGE**
24                                     .)
                                        )
25

26                                       **DEMAND FOR JURY TRIAL**

27

28

Plaintiff STORM MANUFACTURING GROUP, INC. ("Storm" or "Plaintiff") for its complaint herein against WEATHER TEC CORPORATION ("Weather Tec") and NICK ROGERS ("Rogers") (collectively "Defendants") alleges as follows:

## I.

## NATURE OF THE ACTION

1. This is an action for:  (1) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); (2) false advertising under California Business & Professions Code §17533.7; (3) deceptive business practices under California Civil Code §1770; (4) unfair competition under California Business & Professions Code §17200 et seq.; (5) actual monopolization under section 2 of the Sherman Act, 15 U.S.C. § 2; (6) attempted monopolization under section 2 of the Sherman Act, 15 U.S.C. § 2; (7) unlawful exclusionary arrangements in violation of section 3 of the Clayton Act, 15 U.S.C. § 14; (8) intentional interference with prospective business advantage; (9) negligent misrepresentation; and (10) negligent interference with prospective business advantage.

2. Plaintiff seeks monetary, declaratory and injunctive relief due to harm caused by Defendants' deceptive advertising, marketing and packaging and monopolization, attempted monopolization, exclusionary arrangements and other anticompetitive and unfair business acts and practices and negligence designed to maintain its illegal monopoly in the market for Weather Tec brass impact sprinklers in violation of Federal and State statutes and the common law.

3. For almost 100 years, Buckner (a Storm brand), has designed, manufactured, and supplied brass irrigation impact sprinklers to agricultural markets.  The company is distinguished by a longstanding reputation for high quality products, technical expertise and exceptional service to its customer base comprised of distributors of agricultural irrigation systems to growers

1  primarily in California and the Pacific Northwest.  Buckner is a well-respected brand name
2  and enjoys a strong business reputation.  Buckner brass impact sprinklers have consequently
3  developed significant goodwill.  On October 28, 1998, Storm Manufacturing Group, Inc.
4  acquired Buckner's assets and decades of goodwill.  Since that point, Storm has continued to
5  produce the Buckner line of products.

6  4.  Buckner advertises, markets and distributes its goods in a number of different channels,
7  including without limitation:  (a) a network of sales representatives and distributors/dealers,
8  (b) national distributor catalogs, (c) trade shows, and (d) website.

10  5.  Defendants have engaged and continue to engage in deceptive advertising, marketing,
11  attempted monopolization, exclusionary arrangements and other anticompetitive practices
12  designed to maintain their illegal monopoly in the agricultural market for its brass impact
13  sprinklers.

14  6.  As stated by the California Supreme Court in *Kwikset v. Superior Court* (2011) 51 Cal. 4th 310,
15  328-29:

17  **Simply stated:  labels matter.**  The marketing industry is based on the premise
18  that labels matter, that consumers will choose one product over another similar
19  product based on its label and various tangible and intangible qualities they may
20  come to associate with a particular source…. In particular, *to some consumers,*
21  the "Made in the U.S.A." label matters.  A range of motivations may fuel this
22  preference, from the desire to support domestic jobs, to beliefs about quality, to
23  concerns about overseas environmental or labor conditions, to simple patriotism.
24  The Legislature has recognized the materiality of this representation by
25  specifically outlawing deceptive and fraudulent "Made in America"
27  representations. (Cal. Bus. & Prof. Code §17533.7; *see also* Civ. Code

28

§1770(a)(4) (prohibiting deceptive representations of geographic origin).) The object of section 17533.7 is to protect consumers from being misled when they purchase products in the belief that they are advancing the interests of the United States and its industries and workers.

7.  Through an unlawful, deceptive, unfair and/or negligent course of conduct, Defendant Weather Tec manufactured, advertised, marketed, supplied and/or sold its brass impact sprinklers and entire product line to its agricultural distributors with the false designation and representation that Weather Tec's impact sprinklers were "Made in the USA." It further used those false designations and representations about the purported origins of its product line to illegally compete with Storm for market share with key distributors—as part of an "ultimatum" campaign to gain market share from Storm and defend their monopolistic share.

8.  The "Made in the USA" claim is prominently displayed in Weather Tec's advertising, promotional material and product packaging. Example advertisements and labeling are attached to this Complaint as Exhibit A. Contrary to the "Made in the USA" claim, however, Weather Tec's sprinklers are substantially made, manufactured or produced from *component parts* that are manufactured outside of the United States in violation of Federal and California law. In fact, major subcomponents of Weather Tec's brass impact sprinklers are manufactured in Thailand.

9.  As a result of Defendants' anticompetitive, unlawful, deceptive, unfair and/or negligent business practices, Plaintiff has been harmed in that it has lost customers, sales and goodwill.

## II.

## PARTIES

10. Plaintiff Storm Manufacturing Group, Inc. is a corporation organized and existing under the law of the State of California with its principal place of business at 23201 Normandie Ave., Torrance, California 90501.

11. On information and belief, Defendant Weather Tec Corporation is a corporation organized and existing under the laws of the State of California, with its principal place of business at 5645 East Clinton Ave., Fresno, California  93727.

12. On information and belief, Defendant Nick Rogers is an individual residing in the County of Fresno, State of California.

13. Plaintiff is not aware of the true names and capacities of the defendants sued herein as DOES 1-10, inclusive; therefore, Plaintiff sues these defendants by such fictitious names.  Plaintiff is informed and believes that each of the fictitiously named defendants are legally responsible in some manner for the occurrences herein alleged, assisted in and the wrongs complained herein by providing financial support, advice, resources or other assistance.  Plaintiff will amend the complaint to allege their true names and capacities when ascertained.

14. Plaintiff is informed and believes that all defendants were agents, servants and employees of their co-defendants, and in doing the things hereinafter mentioned, were acting within the scope of their authority as such agents, servants and employees with the permission and consent of their co-defendants.

15. As described further below, Defendant Weather Tec conducts business, markets and advertises products in the greater Los Angeles area, and throughout the United States.

### III.

### JURISDICTION AND VENUE

16. This action arises under 15 U.S.C. § 1125(a) and the statutory law of the State of California. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1125 (Lanham Act claims), 15 U.S.C §2 (Sherman Act claims), 15 U.S.C. §§ 14, 15, 26 (Clayton Act claim) and 28 U.S.C. §1367 (supplemental jurisdiction).

17. On information and belief, this Court may exercise personal jurisdiction over Defendants based upon their contacts with this forum, including at least regularly and intentionally doing business and advertising here and committing acts giving rise to this lawsuit here.

18. Venue in this district is proper because Defendant Weather Tec transacts business on a systematic and continuous basis within this District, and may be found here, within the meaning of 15 U.S.C. §§ 15, 22 and 28 U.S.C. §1391.

19. The statute of limitations applicable to prosecution or enforcement of any and all claims for relief and causes of action, whether at law or in equity which Plaintiff has, had, or may have against Defendants, including all applicable California and Federal statutes of limitation, whether statutory or not, and all equitable and common law doctrines of similar affect including, without limitation, the equitable doctrine of laches, are explicitly tolled from and beginning July 27, 2012 through December 21, 2012, pursuant to agreement of the parties.

### IV.

### INTERSTATE COMMERCE

20. The actions complained of herein have restrained and will restrain and adversely affect interstate commerce in that both Plaintiff Storm and Defendant Weather Tec sell products and

services across state lines.  Further, Plaintiff Storm and Defendant Weather Tec purchase goods and supplies in interstate commerce.

## V.

## RELEVANT ANTITRUST MARKET

21. The relevant product market (or submarket) for purposes of this antitrust case is the production and distribution of brass impact sprinklers for agricultural irrigation.

22. The relevant geographic market for purposes of this antitrust case is the United States and Canada.

## VI.

## NATURE OF TRADE AND COMMERCE

**A.    In General**

23. Defendant Weather Tec holds the largest share (approximately 70%) of the California and Pacific Northwest market for brass impact sprinklers used for agricultural irrigation that are at issue in this litigation.  Buckner, Weather Tec's principal competitor, holds approximately 15% of the remaining market share for the overall market for brass impact sprinklers. (Rainbird holds approximately 15% of the market, but competes at a significantly higher price point).

24. In an effort to maintain its market dominance, beginning at an exact date unknown as yet and continuing to the present, Defendant Weather Tec engaged in a concerted effort to drive Buckner out of the market.

**B.    Weather Tec's False Advertising**

25. Weather Tec claimed that its brass impact sprinklers and entire product line are "Made in the USA" in its advertising, promotional material and packaging/labeling.  Specifically, the

7

advertisements display the American flag and state "40 years Made in the USA," "All Weather Tec Products are proudly made right here in the United States of America."

26. Contrary to the "Made in the USA" claims, however, Defendant Weather Tec's brass impact sprinklers and entire product line are substantially and/or partially made, manufactured or produced with component parts that are manufactured outside of the United States. The foreign component parts that constitute the product include the head of the sprinkler.

27. Customers/Distributors of brass impact sprinklers used for agricultural irrigation are vulnerable to these deceptive, misleading and fraudulent practices. Customers/Distributors of brass impact sprinklers are particularly interested in buying products that are made in America. This is a material factor in many Customers/Distributors' purchasing decisions, as they believe they are supporting American companies and American jobs.

28. Defendants' actions were intended to make Customers/Distributors believe that "Made in the USA" products were better than their foreign-manufactured counterparts. Defendants sought to capitalize on the limited knowledge that Customers/Distributors possessed concerning the origins of product, including the component parts therein, that Defendants claimed to have made in the United States and the difficulty Customers/Distributors would have in discerning the true nature of those product origins for themselves. Due to Defendants' scheme and/or negligent conduct that defrauded the market, Customers/Distributors were fraudulently induced to purchase Defendants' brass impact sprinklers, rather than Plaintiff's products. The law is designed to protect against this type of false representation, predatory conduct and/or negligence.

**C.      Defendants' Anticompetitive, Exclusionary and Unfair Strategy and Tactics**

29. Beginning at an exact date unknown as yet and continuing to the present, Defendants engaged in illegal anticompetitive conduct by, *inter alia*:

(a)     issuing an ultimatum to Customers/Distributors of brass impact sprinklers that Weather Tec would not sell any brass impact sprinklers to Customers/Distributors if the Customer/Distributor purchased "offshore" brass impact sprinklers (Buckner product);

(b)     issuing an ultimatum to Customers/Distributors of brass impact sprinklers that if the Customer/Distributor wanted to purchase Weather Tec brass impact sprinklers, then the deal would have to be "exclusive";

(c)     guaranteeing the price of Weather Tec brass impact sprinklers at $6 per sprinkler (the same price Buckner charges), which is approximately $1 less than Weather Tec usually charges, on the condition that the Customer/Distributor would not purchase any brass "import" sprinklers (Buckner) and would replace all of its "import" product (Buckner) with "Made in America" product (Weather Tec).

30. Defendants illegally exploited the monopoly that it obtained and maintained through such activities, to the detriment of Plaintiff.

31. Defendants' anticompetitive conduct included falsely and/or negligently representing that its brass impact sprinklers were "Made in the USA" in its advertising, promotional material, and packaging/labeling.  In its representations to its Customers/Distributors, Defendants created the false impression that Weather Tec's brass impact sprinklers were "Made in America" and that Buckner's product was not.

32. Defendants also issued ultimatums and preferential pricing to its Customers/Distributors to restrain them from purchasing and selling Buckner product.

33. As a direct and proximate result of Defendants' anticompetitive conduct and deceptive and misleading advertising and packaging, Weather Tec maintained its monopoly on the market and Buckner lost customers, sales and goodwill.

# VII.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### False Designation of Origin Under Lanham Act § 43(a), 15 U.S.C. §1125(a)

#### (Against All Defendants)

34. Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 33 hereof.

35. Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)) prohibits a competitor from engaging in commercial advertising, marketing, or promotion that "misrepresents the nature, characteristics, qualities, or geographic origin of" its own or a competitor's "goods, services, or commercial activities."  The Lanham Act also prohibits a competitor from making 'any false designation of origin, false or misleading description of fact or false or misleading representation of fact which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, association . . . as to the origin, sponsorship, or approval of" its own "goods, services, or commercial activities."

36. The Lanham Act is intended to provide protection against a myriad of false, misleading, and deceptive commercial practices.  It was enacted to protect against unfair competition.  It is a remedial statute that is to be broadly applied and construed.

37. Defendant Weather Tec manufactured, advertised, marketed and/or sold its brass impact sprinklers and entire product line with the false designation and representation that Weather Tec's brass impact sprinklers were "Made in the USA."  The "Made in the USA" claim is prominently displayed in Weather Tec's advertising, promotional material and product packaging. *See* Exhibit A.

38. Contrary to the "Made in the USA" claim, however, Weather Tec's sprinklers are substantially made, manufactured or produced from *component parts* that are manufactured outside of the United States in violation of the Lanham Act. In fact, major subcomponents of Weather Tec's impact sprinklers are manufactured in Thailand.

39. Within the relevant time period, and on a continuing basis, Defendant Weather Tec, and through its representatives acting under its supervision and control, has made false, deceptive, or misleading statements or representations to actual and potential Customers/Distributors that its product is "Made in the USA."

40. These material false, deceptive, and misleading statements or misrepresentations of origin were communicated by Defendant Weather Tec to actual and potential Customers/Distributors by means of sales and marketing presentations and online websites.

41. Defendant Weather Tec knew, or had reason to believe, that these representations were false or misleading and were likely to cause a substantial segment of actual and potential Customers/Distributors of Plaintiff Storm's products to be deceived, confused, and/or mistaken about the origin of Defendant Weather Tec's products, and those of Plaintiff Storm.

42. These material statements and representations deceived, or had the capacity to deceive or confuse a substantial segment of actual and potential Customers/Distributors and did, or were likely to influence their purchasing decisions.

43. Defendant Weather Tec's actionable and wrongful conduct has caused commercial and competitive injury to Plaintiff Storm.

44. Defendant Weather Tec's false, deceptive, and misleading practices have affected a substantial volume of interstate commerce.

45. Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, reputation, and goodwill, for which there is no

1   adequate remedy at law. As such, Plaintiff Storm is entitled to an injunction under 15 U.S.C.

2   § 1116 restraining Defendants, their agents, employees, representatives and all persons acting

3   in concert with them from engaging in further acts of false advertising, and ordering removal

4   of all Defendants' false advertisements.

5  46. By reason of, and as a direct and proximate result of Defendant Weather Tec's false,

6     deceptive, confusing, and misleading practices and conduct, Plaintiff Storm has suffered, and

7     will continue to suffer, financial injury to its business and property. As a result, Plaintiff

8

9     Storm has been deprived of revenues and profits it otherwise would have made, suffered

10    diminished market growth, and sustained a loss of goodwill. Plaintiff Storm has not yet

11    calculated the precise extent of its past damages and cannot now estimate with precision the

12    further damages which continue to accrue, but when Plaintiff Storm does so, Storm will seek

13    leave of the Court to insert the amount of the damages sustained herein.

14  47. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants the damages

15

16    sustained by Plaintiff as a result of Defendants' acts in violation of the Lanham Act § 43(a).

17  48. Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the gains,

18    profits and advantages that they have obtained as a result of their acts. Plaintiff is at present

19    unable to ascertain the full amount of the gains, profits and advantages Defendants have

20    obtained by reason of their acts.

21  49. Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the costs of this action.

22

23    Moreover, Plaintiff is informed and believes, and on that basis alleges, that Defendants'

24    conduct was undertaken willfully and with the intention of causing confusion, mistake or

25    deception, making this an exceptional case entitling Plaintiff to recover additional damages

26    and reasonable attorneys' fees.

27

28

**SECOND CLAIM FOR RELIEF**

**False "Made in the USA" Claim, Violation of Business & Professions Code §17533.7**

**(Against All Defendants)**

50. Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 49 hereof.

51. Business & Professions Code Section 17533.7 provides:

> It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words, "Made in U.S.A." "Made in America," "U.S.A.," or similar words when merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

52. Defendants violated the statutory law of the state of California, Cal. Bus. & Prof. Code §17533.7 by selling and offering to sell merchandise in the United States and the State of California with the "Made in the USA" label as fully set forth herein.  Weather Tec's brass impact sprinkler contains significant component parts that are manufactured outside of the United States.

53. Defendants' violation of Business & Professions Code §17533.7 was done with awareness of the fact that the conduct alleged was wrongful and was motivated solely for increased profit. Defendants knew or should have known the harm that would result to Plaintiff and Defendants did these acts notwithstanding that knowledge.

54. Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants as a result of Defendants' false "Made in the USA" claims, which caused Plaintiff to lose customers, sales and goodwill.

55. Plaintiff was injured as a result of Defendants' false "Made in the USA" representations that are at issue in this litigation.

56. Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.  Plaintiff is entitled to an injunction restraining Defendants, their agents, employees, representatives and all persons acting in concert with them from engaging in further such acts, and forbidding Defendants from advertising their brass impact sprinklers as "Made in the USA", and from making other false statements in connection with the product.

57. As a direct and proximate result of Defendants' violations of Business & Professions Code §17533.7, Plaintiff is entitled to a restitutionary recovery from Defendants.

## THIRD CLAIM FOR RELIEF

### Deceptive Practices, Violation of Cal. Civ. Code §1770

### (Against All Defendants)

58. Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 57 hereof.

59. The Consumers Legal Remedies Act, Cal. Civ. Code §1770, provides in pertinent part:

"(a)  The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of good or services to any consumer are unlawful:

(4) Using deceptive representations or designations of geographic origin in connection with goods or services."

60. Defendants violated the statutory law of the state of California, Cal. Civ. Code §1770 by using deceptive representations or designations of geographic origin in its advertising, promotional material and packaging/labeling of its brass impact sprinklers as fully set forth herein.

Weather Tec's brass impact sprinkler contains significant component parts that are manufactured outside of the United States.

61. Defendants' violation of Civil Code §1700 was done with awareness of the fact that the conduct alleged was wrongful and was motivated solely for increased profit. Defendants knew or should have known the harm that would result to Plaintiff and Defendants did these acts notwithstanding that knowledge.

62. Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants as a result of Defendants' false "Made in the USA" claims, which caused Plaintiff to lose customers, sales and goodwill.

63. Plaintiff was injured as a result of Defendants' false "Made in the USA" representations that are at issue in this litigation.

64. Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law. Plaintiff is entitled to an injunction restraining Defendants, their agents, employees, representatives and all persons acting in concert with them from engaging in further such acts, and forbidding Defendants from advertising their brass impact sprinklers as "Made in the USA", and from making other false statements in connection with the product.

65. As a direct and proximate result of Defendants' violation of Civil Code §1770, Plaintiff suffered financial harm and is entitled to damages according to proof.

66. As a direct and proximate result of Defendants' violations of Civil Code §1770, Plaintiff is entitled to a restitutionary recovery from Defendants.

67. Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of the Defendants described herein was done with malice, fraud and oppression and with reckless disregard for the rights of Plaintiff. Accordingly, Plaintiff requests the assessment of

exemplary and punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## FOURTH CLAIM FOR RELIEF

**Actual Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**

**(Against Defendant Weather Tec)**

68. Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 67 hereof.

69. Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, the willful monopolization of any part of the trade or commerce among the States.

70. Defendant Weather Tec is an entrenched player and dominates the relevant market in the United States, possessing a market share of approximately 70%.

71. There are significant and high barriers to market entry that prevent other competitors, such as Plaintiff, from rapidly and meaningfully entering and/or expanding in this relevant market, which include, but are not limited to, the following:

(a)     Weather Tec's dominant market position as a monopolist of the production of brass impact sprinklers for agricultural purposes with a history of engaging in exclusionary and anticompetitive conduct to eliminate competition;

(b)     a substantial up-front capital investment required to penetrate and enter the market and provide product;

(c)     a significant lead time to design and produce product and develop a reputation such that the product can be successfully marketed and sold to Customers/Distributors; and

(d)     a requirement of access to a nationwide sales and online distribution network for this product.

72. Defendant Weather Tec has monopoly power in the relevant market, as reflected by *inter alia*, its substantial share of the market, its ability to exclude competition in the market, and its ability to charge supracompetitive prices for this product.

73. Defendant Weather Tec's monopoly position in the relevant market has been acquired and maintained through intentional exclusionary and predatory conduct, as opposed to business acumen, or historic accident or by virtue of offering a superior product, greater efficiency, or lower prices.

74. Plaintiff Storm has the requisite standing to assert antitrust claims against Defendant Weather Tec because it is a participant and competitor in the relevant market.

75. The anticompetitive scheme and plan of Defendant Weather Tec to attempt to monopolize and/or monopolize the above-described trade and commerce has been done with the intent to specifically eliminate Plaintiff Storm as a viable competitor and threat to Weather Tec's business, and to reduce competition in general.  Defendant Weather Tec's overall exclusionary scheme to monopolize consists of at least the following anticompetitive acts/conduct to be viewed as a whole:

(a)     On information and belief, beginning in or about August 2008 and continuing to the present, Weather Tec entered into a series of exclusive dealing arrangements with companies involved in the distribution of brass impact sprinklers for agricultural use, including without limitation Water Tech, Rain 4 Rent, Lake Company, Farm Equipment & Supply, Agri-Valley, Cal Coast, Irrigation West, U.S. Irrigation, J & L, West Coast Irrigation, Lodi Irrigation and Water Ways.

(b)     Weather Tec successfully threatened, intimidated, deceived, and or coerced actual and potential Customers/Distributors of Storm's brass impact sprinklers to completely exclude all "brass import product" (Buckner) and sell only "Made in the USA" product (Weather Tec);

(c)     Weather Tec successfully threatened, intimidated, deceived, and/or coerced actual and potential Customers/Distributors of Storm's brass impact sprinklers not to deal with Storm and to return Buckner product to Storm and *not* to sell Buckner product.  For example, when Weather Tec found out that Distributor Rain 4 Rent had purchased Buckner product, Weather Tec threatened and coerced Rain 4 Rent to send back Buckner product and replace it with product "Made in the USA" (Weather Tec).  Distributors questioned the legality of the exclusionary ultimatum.

(d)     On information and belief, in or about April 2012, Weather Tec entered into an exclusionary arrangement with Agri-Valley guaranteeing the price of Weather Tec brass impact sprinklers at $6 per sprinkler (the same price Buckner charges), which is approximately $1 less than Weather Tec usually charges, on the condition that Agri-Valley would not purchase any brass "import" sprinklers (Buckner) and would replace all of its "import" product (Buckner) with "Made in America" product (Weather Tec).  Distributors agreed to the exclusionary arrangement because they wanted to use "Made in America" products as much as possible.

(e)     On information and belief, Weather Tec withdrew distributorships, (including but not limited to West Coast Irrigation and Farm Equipment & Supply), from Distributors that continued to use Buckner product.

76.   Conduct is anticompetitive when it unnecessarily excludes or handicaps competitors in order to gain or maintain a monopoly.  Anticompetitive or exclusionary practices are acts designed to deter potential rivals from entering the market or prevent existing rivals from increasing their output.  Anticompetitive acts are not competition on the merits, but instead acts that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market.  Conduct by a monopolist that constitutes

1   a deliberate effort to discourage customers from doing business with its smaller rivals is

2   anticompetitive.

3   77. Defendant Weather Tec's anticompetitive and exclusionary conduct described herein is not

4   motivated or driven by technological or efficiency concerns and has no valid or legitimate

5   business justification.  Rather, its purpose and effect is to ensure the Plaintiff Storm and other

6   smaller rivals in the relevant market cannot successfully invade or erode Defendant Weather

7   Tec's dominant and entrenched market position.

8

9   78. During the relevant time period, Defendant Weather Tec and Plaintiff Storm have both

10   designed, marketed and sold brass impact sprinklers for agricultural purposes in the United

11   States.  The marketing, distribution, and sale of such product directly involves, and

12   substantially affects, interstate commerce.  The violations of the Sherman Act alleged herein

13   adversely, directly, and substantially affect the flow of such product in interstate commerce.

14   79. As alleged herein, Defendant Weather Tec has engaged in an anticompetitive scheme to

15   prevent Plaintiff Storm and other competitors from penetrating or expanding in the relevant

16   market, all for the unlawful purpose of maintaining and increasing Defendant Weather Tec's

17   market share and supracompetitive pricing for its brass impact sprinklers.

18

19   80. The aforesaid conduct of Defendant Weather Tec has produced antitrust injury, and unless

20   enjoined by this Court, will continue to produce at least the following anticompetitive,

21   exclusionary, and injurious effects upon competition in interstate commerce:

22   (a)   competition in the agricultural brass impact sprinkler market has been substantially

23   and unreasonably restricted, lessened, foreclosed, and eliminated;

24

25   (b)   barriers to entry into the market have been raised;

26   (c)   consumer choice has been, and will continue to be significantly limited and

27   constrained as to selection, price, and quality of brass impact sprinkler distribution;

28

(d)    consumer access to Plaintiff Storm's competitive products/services will be artificially restricted and reduced and its products/services will continue to be excluded from the market;

(e)    the market for the production and distribution of brass impact sprinklers for agricultural purposes will continue to be artificially restrained or monopolized; and

(f)    Defendant Weather Tec will continue to charge supracompetitive prices to the detriment of consumers.

81.   Defendant Weather Tec's predatory and exclusionary conduct has caused antitrust injury to Plaintiff Storm, competition, and consumers.

82.  By reason of, and as a direct and proximate result of Defendant Weather Tec's anticompetitive and exclusionary practices and conduct, Plaintiff Storm has suffered, and will continue to suffer, financial injury to its business and property.  As a result, Plaintiff Storm has been deprived of revenue and profits it would have otherwise made, suffered diminished market growth, and sustained a loss of goodwill.  Plaintiff Storm has not yet calculated the precise extent of its past damages and cannot now estimate with precision the future damages that continue to accrue, but when Plaintiff Storm does so, Plaintiff will seek leave of the Court to insert the amount of the damages sustained herein.

**FIFTH CLAIM FOR RELIEF**

**Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**

**(Against Defendant Weather Tec)**

83. Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 82 hereof.

84. Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, attempts to monopolize any part of the trade or commerce among the States.

85. Defendant Weather Tec's conduct and practices are anticompetitive, predatory, and/or exclusionary. Defendant Weather Tec's overall unlawful scheme is described above.

86. Plaintiff Storm has the requisite standing to assert antitrust claims against Defendant Weather Tec because it is a participant and competitor in the relevant market.

87. Absent action by this Court to enjoin and preclude Defendant Weather Tec from continuing its anticompetitive and exclusionary conduct, there is a dangerous probability that Weather Tec will succeed in obtaining a monopoly in the relevant market (or continue to monopolize), including the power to set prices, reduce output, or exclude competition in the market for the production and distribution of brass impact sprinklers for agricultural purposes.

88. Defendant Weather Tec has undertaken its anticompetitive and exclusionary conduct with the purpose of monopolizing, and with the deliberate and specific intent to monopolize, the relevant market in the United States. Defendant Weather Tec specifically intends to eliminate, destroy, or foreclose meaningful competition in the relevant market through the tactics and exclusionary agreements described above. Defendant Weather Tec's conduct discourages and/or precludes Customers/Distributors from dealing or contracting with competing suppliers, such as Plaintiff Storm. Defendant Weather Tec's scheme is designed to exclude and thwart competition while allowing it to charge supracompetitive prices for its brass impact sprinklers.

89. As described above, significant and high barriers to market entry exist that precludes or discourages new competitors from entering the relevant market. Significant barriers to expansion also exist because only a small number of competitors have managed to marginally penetrate this market.

90. Defendant Weather Tec's anticompetitive acts affect a substantial amount of interstate commerce in the relevant market and constitute attempted monopolization in violation of Section 2 of the Sherman Act. Defendant Weather Tec's conduct is not motivated by

1   technological or efficiency concerns and has no valid or legitimate business justification.

2   Instead, its purpose and effect is to further or preserve its monopoly position and stranglehold,

3   and to injure consumer welfare, Plaintiff Storm, and other competitive rivals in the relevant

4   market.

5   91. Defendant Weather Tec's anticompetitive acts have caused substantial economic injury to

6   Plaintiff Storm, and have also injured competition in the relevant market by, *inter alia*,

7   foreclosing, lessening, and eliminating competition and depriving Plaintiff and other

8   competitive rivals in the relevant market from securing lower cost or higher quality

9

10   alternatives, or both, for brass impact sprinklers.

11   92. The aforesaid conduct of Defendant Weather Tec has produced antitrust injury, and unless

12   enjoined by this Court, will continue to produce at least the following anticompetitive,

13   exclusionary, and injurious effects upon competition in interstate commerce:

14       (a)     competition in the production and distribution of  brass impact sprinklers for

15   agricultural use has been substantially and unreasonably restricted, lessened, foreclosed, and

16   eliminated;

17

18       (b)     barriers to entry into the relevant market have been raised;

19       (c)     consumer choice has been, and will continue to be, significantly limited and

20   constrained as to selection, price, and quality of distribution of product;

21       (d)     consumer access to Plaintiff Storm's competitive offerings will be artificially

22   restricted and reduced and its products will continue to be excluded from the market;

23

24       (e)     the market for the production and distribution of brass impact sprinklers will

25   continue to be artificially restrained or monopolized; and

26       (f)     Defendant Weather Tec will continue to charge supracompetitive prices to the

27   detriment of Consumers/Distributors.

28

93.   Defendant Weather Tec's predatory and exclusionary conduct has caused antitrust injury to Plaintiff Storm, competition, and consumers.

94. By reason of, and as a direct and proximate result of, Defendant Weather Tec's practices and conduct, Plaintiff Storm has suffered, and will continue to suffer, financial injury to its business and property.  As a result, Plaintiff Storm has been deprived of revenue and profits it would have otherwise made, suffered diminished market growth, and sustained a loss of goodwill.  Plaintiff Storm has not yet calculated the precise extent of its past damages and cannot now estimate with precision the future damages that continue to accrue, but when Plaintiff Storm does so, Storm will seek leave of the Court to insert the amount of the damages sustained herein.

**SIXTH CLAIM FOR RELIEF**

**Unlawful Exclusionary Arrangements in Violation of**

**Section 3 of the Clayton Act (15 U.S.C. §14)**

**(Against All Defendants)**

95. Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 94 hereof.

96. Section 3 of the Clayton Act (15 U.S.C. § 14) makes it unlawful, *inter* alia, "[f]or any person . . . to lease or make a sale or contract for sale of goods . . . on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods . . . of a competitor . . . of the lessor or seller, where the effect . . . may be to substantially lessen competition or tend to create a monopoly" in the relevant market.  Arrangements and contracts whose probable effect is to foreclose competition in a substantial share or segment of the line of commerce affected violate Section 3.

97. The relevant product market (or submarket) for antitrust purposes in this case is defined as the production and distribution of brass impact sprinklers for agricultural irrigation. The relevant geographic market for purposes of this antitrust case is the United States.

98. Defendant Weather Tec dominates the relevant market in the United States, possessing a market share of approximately 70%.

99. There are significant and high barriers to market entry that prevent other competitors from rapidly and meaningfully entering and/or expanding in the relevant market, which include but are not limited to the following:

(a)     Weather Tec's dominant market position as a monopolist of the production of brass impact sprinklers for agricultural purposes with a history of engaging in exclusionary and anticompetitive conduct to eliminate competition;

(b)     a substantial up-front capital investment required to penetrate and enter the market and provide product;

(c)     a significant lead time to design and produce product and develop a reputation such that the product can be successfully marketed and sold to Customers/Distributors; and

(d)     requirement of access to a nationwide sales and online distribution network for this product.

100.     Plaintiff Storm has the requisite standing to assert antitrust claims against Defendant Weather Tec because it is a participant and competitor in the relevant market.

101.     The anticompetitive scheme and plan of Defendant Weather Tec to substantially lessen competition and create a monopoly in the above-described trade and commerce has been done with the intent to specifically eliminate Plaintiff Storm as a viable competitor and threat to Defendant Weather Tec's brass impact sprinkler business and to reduce competition in

general. Defendant Weather Tec's overall anticompetitive scheme consists of at the least the following acts/conduct to be viewed as a whole:

(a)     On information and belief, beginning in or about August 2008 and continuing to the present, Weather Tec entered into a series of exclusive dealing arrangements with companies involved in the distribution of brass impact sprinklers for agricultural use, including without limitation Water Tech, Rain 4 Rent, Lake Company, Farm Equipment & Supply, Agri-Valley, Cal Coast, Irrigation West, U.S. Irrigation, J & L, West Coast Irrigation, Lodi Irrigation and Water Ways.

(b)     Weather Tec successfully threatened, intimidated, deceived, and or coerced actual and potential Customers/Distributors of Storm's brass impact sprinklers to completely exclude all "brass import product" (Buckner) and sell only "Made in the USA" product (Weather Tec);

(c)     Weather Tec successfully threatened, intimidated, deceived, and/or coerced actual and potential Customers/Distributors of Storm's brass impact sprinklers not to deal with Storm and to return Buckner product to Storm and *not* to sell Buckner product. For example, when Weather Tec found out that Distributor Rain 4 Rent had purchased Buckner product, Weather Tec threatened and coerced Rain 4 Rent to send back Buckner product and replace it with product "Made in the USA" (Weather Tec). Distributors questioned the legality of the exclusionary ultimatum.

(d)     On information and belief, in or about April 2012, Weather Tec entered into an exclusionary arrangement with Agri-Valley guaranteeing the price of Weather Tec brass impact sprinklers at $6 per sprinkler (the same price Buckner charges), which is approximately $1 less than Weather Tec usually charges, on the condition that Agri-Valley would not purchase any brass "import" sprinklers (Buckner) and would replace all of its "import" product (Buckner) with "Made

1   in America" product (Weather Tec).  Distributors agreed to the exclusionary arrangement because

2   they wanted to use "Made in America" products as much as possible.

3       (e)     On information and belief, Weather Tec withdrew distributorships, (including but

4   not limited to West Coast Irrigation and Farm Equipment & Supply), from Distributors that

5   continued to use Buckner product.

6   102.    Exclusive dealing arrangements have the effect of inducing or coercing a buyer to purchase

7   most, or all, products for a period of time from one supplier.  The arrangement may take the

8   form of a requirements contract committing the buyer to purchase all (or a substantial portion)

9   of its requirements of a specific product only from one supplier.  Such unlawful arrangements

10  also include pricing policies that create a substantial disincentive to purchase products from

11  competitive sources.

12  103.    Exclusionary arrangements do not actually have to proscribe exclusivity to be deemed

13  unlawful under Section 3.  Such "de facto" arrangements, understandings, and/or contracts are

14  anticompetitive if they create or maintain market power resulting in the exclusion of rivals.

15  104.    Exclusionary arrangements or contracts can be found illegal even though the

16  contract/arrangement does not contain specific agreements not to use the products of a

17  competitor, if the practical effect is to prevent such use or purchase.  Further, contracts or

18  arrangements utilized by a monopolist that provide price discounts to induce a buyer to

19  purchase most, or all, of their product needs, but do not require absolute exclusivity are also

20  unlawful de facto exclusive dealing arrangements.

21  105.    Weather Tec's anticompetitive and exclusionary conduct described herein is not motivated

22  or driven by technological or efficiency concerns, and has no valid or legitimate business

23  justification.  Rather, its purpose and effect is to ensure that Plaintiff Storm and other

competitive rivals in the relevant market cannot successfully invade or erode Defendant

Weather Tec's dominant and entrenched brass impact sprinkler distribution market position.

106.    During the relevant time period, Defendant Weather Tec and Plaintiff Storm have both

designed created, marketed, distributed, and sold agricultural brass impact sprinkler products

in the United States.  The marketing, distribution, and sale of such products directly involves,

and substantially affects, interstate commerce.  The violations of the Clayton Act alleged

herein adversely, directly, and substantially affect the flow of such products in interstate

commerce.

107.    The aforesaid unlawful conduct of Defendant Weather Tec has produced antitrust injury,

and unless enjoined by this Court, will continue to produce at least the following

anticompetitive, exclusionary, and injurious effects upon competition in interstate commerce:

(a)     competition in the agricultural brass impact sprinkler market has been substantially

and unreasonably restricted, lessened, foreclosed, and eliminated;

(b)     barriers to entry into the market have been raised;

(c)     consumer choice has been, and will continue to be significantly limited and

constrained as to selection, price, and quality of brass impact sprinkler distribution;

(d)     consumer access to Plaintiff Storm's competitive products/services will be

artificially restricted and reduced and its products/services will continue to be excluded from the

market;

(e)     the market for the production and distribution of brass impact sprinklers for

agricultural purposes will continue to be artificially restrained or monopolized; and

(f)     Defendant Weather Tec will continue to charge supracompetitive prices to the

detriment of consumers.

108.   Defendant Weather Tec's practices, described above, have foreclosed competition in a substantial share of the relevant market and have substantially lessened competition and/or tended to create a monopoly for Defendant Weather Tec in the relevant market.

109.   Defendant Weather Tec's exclusionary agreements, arrangements, and/or contracts have caused antitrust injury to Plaintiff Storm, competition, and consumers.  Conduct that restricts consumer choice or makes the market unresponsive to consumer preference harms consumers and results in antitrust injury.  When an agreement detrimentally changes the market make-up and limits consumers' choice to one source of output, this causes cognizable antitrust injury of preventing its victims from making free and unhindered choices between market alternatives.

110.   Defendant Storm's anticompetitive and exclusionary conduct has caused antitrust injury to Plaintiff Storm, competition, and consumers.

111.   By reason of, and as a direct and proximate result of, Defendant Weather Tec's unlawful practices and conduct, Plaintiff Storm has suffered, and will continue to suffer, financial injury to its business and property.  As a result, Plaintiff Storm has been deprived of revenues and profits it would have otherwise made, suffered diminished market growth, and sustained a loss of goodwill.  Plaintiff Storm has not yet calculated the precise extent of its past damages and cannot now estimate with precision the future damages that continue to accrue, but when Plaintiff Storm does so, Storm will seek leave of the Court to insert the amount of the damages sustained herein.

## SEVENTH CLAIM FOR RELIEF

### Statutory Unfair Competition—Cal. Bus. & Prof. Code §17200, *et seq.*

### (Against All Defendants)

112.   Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 111 hereof.

113.    Business & Professions Code §17200 provides that unfair competition means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading marketing."

114.    By and through their conduct, including the conduct detailed above, Defendants have made, published, disseminated, and circulated false, deceptive and misleading statements, representations, and advertisements in California misrepresenting the country of origin of their brass impact sprinklers with the intent of selling, distributing and increasing the purchase of, and interest in, their product.  Defendants also issued ultimatums and preferential pricing to its Customers/Distributors to restrain them from purchasing and selling Storm's Bucker brand product.

115.    Defendants' conduct as alleged herein constitutes unfair competition in that such acts were and are unlawful, unfair, deceptive and/or fraudulent business acts or practices in violation of California Business & Professions Code §17200, *et seq*. Plaintiff reserves the right to identify additional violations of Defendants as may be established through discovery.

116.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered injury in fact, which losses include damage to Plaintiff's goodwill with its existing, former and potential customers.  Defendants' conduct has also caused damage to consumers.

117.    These wrongful acts have proximately caused and will continue to cause Plaintiff Storm substantial injury, including loss of customers, dilution of goodwill, confusion of existing and potential customers, and diminution of the value of Plaintiff's products.  The harm these wrongful acts will cause to Plaintiff is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if these acts continue.  Plaintiff has no adequate remedy at law.

118.   Plaintiff is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further such unlawful conduct.

119.   Plaintiff is further entitled to a restitutionary recovery from Defendants.

## EIGHTH CLAIM FOR RELIEF

### Intentional Interference with Prospective Economic Advantage

### (Against All Defendants)

120.   Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 119 hereof.

121.   Beginning in or around August 2008 and continuing to the present, Defendants developed economic relationships with Customers/Distributors of Weather Tec's brass impact sprinklers, which resulted in probable future economic benefit to Defendants.

122.   Defendants knew of the above-described relationships existing between Plaintiff and its Customers/Distributors as evidenced by the above-described conduct.

123.   Defendants falsely represented to Plaintiff's Customers/Distributors that Weather Tec's brass impact sprinklers were "Made in the USA," all with the intent to harm Plaintiff financially and to induce these Customers/Distributors to sever their business relationships with Plaintiff.

124.   Defendants also issued ultimatums and preferential pricing to its Customers/Distributors, as alleged herein, to restrain them from purchasing and selling Buckner product.

125.   Defendants' actions caused a disruption of Plaintiff's economic relationships with its Customers/Distributors and caused the termination of Plaintiff's business relationships, and interfered with Plaintiff's rights and ability to communicate with Customers/Distributors and its rights and ability to compete against Defendant Weather Tec.

126.    As a proximate result of Defendants' conduct and the loss of agreements with
Customers/Distributors, Plaintiff has suffered damages in an amount to be established at trial.

127.    The aforementioned acts of Defendants were willful, oppressive, fraudulent and malicious
so as to entitle Plaintiff to punitive damages.

128.    Defendants continue to and unless restrained, will continue to disrupt other business
relationships between Plaintiff and their Customers/Distributors to Plaintiff's great and
irreparable injury, for which damages would not afford adequate relief, in that they would not
completely compensate for the injury to Plaintiff's business reputation and goodwill.

## NINTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (Against All Defendants)

129.    Plaintiff specifically reallages and incorporates herein by reference each and every
allegation contained in Paragraphs 1 through 128 hereof.

130.    As set forth above, Defendants made representations and statements to Plaintiff and others,
which were materially false, incomplete, inaccurate, and misleading as to the origins of their
products.

131.    Defendants had no reasonable grounds for believing the representations were true when
they made them.

132.    Defendants intended that Plaintiff and others would rely on the representations and
statements made concerning the origins of their products, to Plaintiff's detriment, for the
purpose of discouraging Plaintiff and others from competing in the market place or acting
sooner to discover the nature of Defendants' illegal conduct.

133.   That Plaintiff was harmed, and that Plaintiff's reliance on Defendants' misrepresentations and statements concerning the origins of their products was a substantial factor in causing Plaintiff's harm.

134.   As a direct and proximate cause and result of the conduct alleged herein, Plaintiff has been substantially damaged and is entitled to an award by the Court against Defendants for its actual damages and of punitive and exemplary damages.

### TENTH CLAIM FOR RELIEF

### Negligent Interference with Prospective Economic Advantage

### (Against All Defendants)

135.   Plaintiff specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 134 hereof.

136.   As set forth above, Plaintiff and its Customers/Distributors were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiffs.

137.   Being in the same space in the market place, Defendants knew or should have known of Plaintiff's relationship with its Customers/Distributors.

138.   Defendants knew or should have known that Plaintiff's relationship with its Customers/Distributors would be disrupted if they failed to act with reasonable care.

139.   In their advertising to Customers/Distributors, which contravenes state and federal law, Defendants failed to act with reasonable care.

140.   Defendants' actions caused Plaintiff's relationship with its Customers/Distributors to be disrupted, harming Plaintiff with less sales and goodwill, among other things, and Defendants' false and misleading advertising campaign and wrongful "ultimatum" strategy with Customers/Distributors were substantial factors in causing Plaintiff's harm.

141.    As a direct and proximate cause and result of the conduct alleged herein, Plaintiff has been substantially damaged and is entitled to an award by the Court against Defendants for its actual damages and of punitive and exemplary damages.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff Storm prays that this Court adjudge and decree as follows:

1.    That the conduct alleged in the First Claim for Relief herein be adjudged to constitute a violation of the Lanham Act (15 U.S.C. §1125(a));

2.    That the conduct alleged in the Second Claim for Relief herein be adjudged to be a willful violation of §17533.7 of the California Business and Professions Code;

3.    That the conduct alleged in the Third Claim for Relief herein be adjudged to be a willful violation of §1770 of the California Civil Code;

4.    That the conduct alleged in the Fourth Claim for Relief herein be adjudged to be a willful violation of §17200 of the California Business and Professions Code;

5.    That the conduct alleged in the Fifth Claim for Relief herein be adjudged to be unlawful monopolization in violation of Section 2 of the Sherman Act (15 U.S.C. § 2);

6.    That the conduct alleged in the Sixth Claim for Relief herein be adjudged to be an unlawful attempt to monopolize in violation of Section 2 of the Sherman Act (15 U.S.C. § 2);

7.    That the conduct alleged in the Seventh Claim for Relief herein be adjudged to be in violation of Section 3 of the Clayton Act (15 U.S.C. § 14);

8.    That the conduct alleged in the Eighth Claim for Relief herein be adjudged to have intentionally interfered with Plaintiff's prospective economic advantage;

9.    That the conduct alleged in the Ninth Claim for Relief herein be adjudged to constitute negligent misrepresentation;

10. That the conduct alleged in the Tenth Claim for Relief herein be adjudged to constitute negligent interference with prospective economic advantage;

11. A preliminary and permanent injunction against false designation of origin, restraint of trade, preferential pricing, exclusive dealing, and unfair competition by Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with any of them;

12. An order directing the destruction of all Weather Tec products that contain the deceptive and misleading "Made in the USA" slogan, including the destruction of all advertising and marketing materials and packaging containing the "Made in the USA" slogan, including on the Internet and at trade shows;

13. An award of damages adequate to compensate Plaintiff for the unlawful business acts and practices that have occurred as a result of violation of the Lanham Act, §1125 of Title 15 in the United States Code, which shall be trebled as a result of Defendants' willful false designations of origin, or an award of Defendants' profits, whichever is greater, together with prejudgment interest and costs;

14. That, pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), and other applicable authority, Plaintiff Storm recover treble the actual amount of its damages sustained by reason of those federal antitrust violations;

15. That, pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), and other applicable authority, Plaintiff be awarded reasonable attorneys' fees and costs of litigation;

16. That, pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), and other applicable authority, the anticompetitive, predatory, and/or exclusionary conduct of Defendant Weather Tec be permanently enjoined;

17.    An award of restitution of excess monies paid to Defendants by its customers as a result of Defendants' false "Made in the USA" claims, pursuant to California Business and Professions Code §17533.7 and California Civil Code §1770;

18.    An award of restitution and disgorgement of ill-gotten gains as allowed by law and equity as determined to have been sustained by Plaintiff as a result of Defendants' unlawful, unfair, and/or fraudulent business practices within the meaning of California's Unfair Competition Act, California Business and Professions Code §17200;

19.    For punitive damages, pursuant to California Civil Code §3294, to punish Defendants for their outrageous conduct, and to deter such future wrong and outrageous conduct;

20.    For reasonable attorneys' fees and costs;

21.    For prejudgment and post judgment interest;

22.    Such other and further relief as this Court may deem just and proper.

**Law Offices of Ann E. Grant**

DATED:  December 20, 2012                    By: *Ann E. Grant*
                                                ANN E. GRANT
                                                Attorneys for Plaintiff Storm
                                                Manufacturing Group, Inc.

1

2 **DEMAND FOR JURY TRIAL**

3    Plaintiff Storm hereby demands trial by jury pursuant to Rule 38(b) of the Federal Rules of

4 Civil Procedure and Local Rule 38-1.

5

6

7

8 **Law Offices of Ann E. Grant**

9

10

11 DATED:  December 20, 2012          By: _Ann E. Grant_

12                                        ANN E. GRANT
                                          Attorneys for Plaintiff Storm
13                                        Manufacturing Group, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



**40 Years**

Weather Tec Corporation celebrates over 40 years of manufacturing innovative sprinkler systems.

**Made In The USA**

All Weather Tec products are proudly made right here in the United States of America.

**Who We Are**

Weather Tec Corporation of Fresno, California, was organized in 1971, a manufacturer of agricultural impact-drive sprinkler heads. The first production item was the Weather Tec Model 10-20 which became a prominent market contender in 1971.

To this day, Weather Tec Corporation still manufactures in the USA, a full line of brass impact sprinklers for the agricultural industry. Tens of millions of Weather Tec sprinklers have been produced over the years and many millions are in use today.

Most importantly, ever sprinkler is individually water-tested before shipment, a requirement of the company. In addition, Weather Tec is a subscriber to CIT (Center for Irrigation Technology) at California State University Fresno, recognized as the leading test facility in Fresno.

As we look to the future, Weather Tec will continue to focus on agri-business and will continue to manufacture right here in the United States of America, as we market to the world. We will design and improve existing products as well as design and develop new products to maintain our position as the "Preferred Choice of Agriculture" and stand by these important ideals; Quality, Performance, Durability, Reliability and Value.

Copyright © 2011, Weather Tec Corp. Site Designed and Maintained by Certified Ad Services | Terms

build Curl potato and onion harvesters and planters. The onion equipment was a perfect fit for the onion-concentrated region of the western Treasure Valley, and was a key part of the Parma line for years to come.

As the sugarbeet industry rebounded in the 1990s, harvesters and defoliators regained their major status of Parma's manufacturing business. Parma continued its innovative leadership with the development of the first production model sugarbeet harvester with a rear squeeze chain elevator, a design which is now the industry standard.

In 1989, David Shuff left Parma Company to start out on his own to develop the Top Air onion-topping equipment at Specialized Manufacturing. Ten years later, Keith Parker acquired the remaining shares from Tennan Barnard to become sole proprietor of Parma Company.

In 1996 the company began production of a rolling harrow. The Parma Rollaharrow replaced the Ground Hog tillage tool formally built by Ace Supply Company of Idaho. Along with this seed bed preparation tool came the development of other such tillage tools, including multi-purpose packers, landplanes and the Parma Arena Groomer harrow used for working and conditioning horse arenas.

In 2000, Parma Company expanded again with the acquisition of the Dirks (formally Tycrop) "Supera" manure spreader. This acquisition returned to the Parma line, a farm box product missing since the mid-70s. Once again, Parma Company expanded this product into a full-line of truck-mounted manure and compost spreaders, along with truck-mounted forage boxes and semi tractor-pulled forage trailers.

Today, Parma Company is 30 years old and continues to be a vibrant, innovative farm equipment manufacturer with its foundation firmly rooted in that small town atmosphere created from its "blacksmith shop" origins. PG

## PARMA COMPANY

P.O. Box 190
101 Main Street
Parma, ID 83660
(877) 722-5116
www.parmacompany.com



**Lockwood MFG.**
We Know Potatoes
In the Ground & Out
3 Idaho Locations to serve you better.
**Give us a call today!**
Rexburg 208-356-6700
Blackfoot 208-705-7009   Paul 208-438-2171



Environmental Control Through Irrigation

WEATHERTEC
Made in USA
40 Years Servicing American Agriculture



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV12- 10849 CAS (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY



Ann E. Grant (SBN 157522)
1500 Rosecrans Ave., Suite 500
Manhattan Beach, California 90266
Telephone: 310.802.1500

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| STORM MANUFACTURING GROUP, INC., a California Corporation, <br><br> PLAINTIFF(S) <br><br> v. <br><br> WEATHER TEC CORPORATION, a California Corporation; NICK ROGERS, an individual, and DOES 1 through 10, inclusive, <br><br> DEFENDANT(S). | **CV12-10849**—CAS (FFMx) <br><br><br> **SUMMONS** |

TO:     DEFENDANT(S):

     A lawsuit has been filed against you.

     Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Law Offices of Ann E. Grant</u>, whose address is <u>1500 Rosecrans Ave., Suite 500, Manhattan Beach, California 90266</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: DEC 2 0 2012 _____

By: ___ MARILYN DAVIS ___
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| STORM MANUFACTURING GROUP, INC., a California Corporation | WEATHER TEC CORPORATION, a California Corporation; NICK ROGERS, an individual, and DOES 1 through 10, inclusive |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Law Offices of Ann E. Grant          310-802-1500<br>1500 Rosecrans Ave., Suite 500<br>Manhattan Beach, CA 90266 | Wanger Jones Helsley PC          559-233-4800<br>265 E. River Park Circle, Suite 310<br>Fresno, CA 93720 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No     ☒ **MONEY DEMANDED IN COMPLAINT: $** TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. 882, 14 Violations of federal antitrust laws; 15 U.S.C. §1125 Lanham Act violations

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☒ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____   **CV12-10849**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant Weather Tec--Los Angeles, California | Defendant Nick Rogers--Fresno, California |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | Fresno, California |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _Ann E. Grant_  Date December 22 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |